IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOMASZ WIEK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 09 C 920 |
| v. | ) |
| | ) Honorable William J. Hibbler |
| CITY OF CHICAGO, P.O. KEANE, | ) |
| P.O. REYES, and P.O. HAJDU, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tomasz Wiek brings this lawsuit against Defendant the City of Chicago, and three of its police detectives, alleging that the detectives entered and searched his home and subjected him to unreasonable detention in violation of his Fourth Amendment rights. The parties have filed cross motions for summary judgment. For the following reasons, the Court GRANTS summary judgment in Wiek's favor and against defendant detectives Keane and Hajdu on the home entry claim, and GRANTS summary judgment for all Defendants on the unreasonable detention claim.

**I. Factual Background**

The following relevant facts are undisputed, unless otherwise specified. The Court only considers a fact to be disputed if the party asserting the dispute offers evidence supporting that assertion. *See* Fed. R. Civ. P. 56(c).

On or about February 17, 2007, detectives Kean, Hajdu, and Reyes were assigned to investigate a pair of armed robberies that occurred on February 9, 2007 at about 8:30 p.m. in the 5400 block of W. Barry in Chicago. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶¶ 4.) The victims of those robberies identified their attackers as

1

young, white males in their late teens or twenties. (Def. St. ¶ 5.) The initial police reports indicated that the assailants might live close to the crimes scenes, as they were able to get away quickly. (*Id.*)

Detective Keane assembled a photo array to show the robbery victims. (*Id.*) Both victims identified Artur Wiek, the Plaintiff's brother, as the man who had robbed them. (Def. St. ¶¶ 7-8.) One of the victims also identified Tomasz Wiek, the Plaintiff, as being involved in the crime. (Def. St. ¶ 8.) The detectives traveled to an address that the Wiek brothers had provided during a previous arrest. (Def. St. ¶ 10.) There, they met Barbara Wiek, Artur and Tomasz's mother, who gave the detectives the Tomasz's new address: 5101 N. East River Road, Apt. 3L. (*Id.*)

The same day, detectives Keane and Hajdu traveled to 5101 N. East River Road and entered the apartment building's shared front entrance. (Def. St. ¶ 14.) The door at the front entrance did not require a key or buzzer to open. (*Id.*) The detectives walked through a common hallway lined with apartment units and up a shared flight of stairs to apartment unit 3L. (Def. St. ¶ 15.) While standing in the hallway, Detectives Keane and Hajdu heard a voice emanating from the apartment, in what sounded like a man arguing with someone over the phone. (Def. St. ¶ 16.) The Detectives heard the name "Artur" more than once. (*Id.*) After the yelling stopped, one of the Detectives knocked on the door. (Def. St. ¶ 18.) Plaintiff Tomasz Wiek opened the door and saw two men in bullet-proof vests, one of whom was pointing a gun at his head. (Doc. No. 50-1 at 81.) Defendants Hajdu and Kean directed Wiek to lie down and put his hands behind his back. (Def. St. ¶ 21.) Wiek complied. (*Id.*) Defendants Hajdu and Kean entered Wiek's apartment to handcuff him. (Pl. St. ¶ 11.)

One of the officers then searched Wiek's apartment. The scope of that search is disputed. Wiek stated that the officer conducted a thorough search of the apartment. (Doc. No. 50-1 at 81.) Detective Hajdu stated that the search was cursory. (Doc. No. 50-1 at 56.)

Defendants had not procured a warrant to arrest Wiek or search his apartment. (Pl. St. ¶ 13.)

Later that day at the station, detective Keane ran Tomasz Wiek's name through various law enforcement databases and found that a Cook County Circuit Court had issued a warrant for his arrest on February 6, 2006 for the offense of driving with a suspended or revoked license. (Def. St. ¶ 32.) None of the defendant detectives were aware of that outstanding warrant when they arrested Wiek. (Def. St. ¶ 32; Pl. St. ¶ 13.)

At some point on February 17, 2007, one of the defendant detectives filled out a form known as a "hold paper," which requested approval from a police supervisor to hold Wiek in custody overnight at the police station. (Pl. St. ¶¶ 16, 19.) The next day, on February 18, 2007, Defendants exhibited Wiek in two line-ups, which resulted in the victims' inconsistent identifications of him as the robber. (Pl. St. ¶ 22.) Plaintiff remained in the custody of the Chicago Police Department until he appeared before a judge on February 19, 2007. (Pl. St. ¶ 23.) Thereafter, he remained in the custody of the Sheriff of Cook County until he was released following his acquittal on May 7, 2008. (*Id.*)

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

3

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

**III. Analysis**

Wiek alleges that detectives Hajdu and Kean violated the Fourth Amendment when they entered his home without a warrant to effectuate his arrest and that all defendants violated the Fourth Amendment when they held him overnight so they could collect additional evidence to justify his arrest.

**A. Unlawful Entry**

The right to be free from unwanted intrusion into one's home is chief among the protections of the Fourth Amendment. *Payton v. New York*, 445 U.S. 573 (1980). Although an officer may make a warrantless arrest in public places so long as there is probable cause, he may not enter a suspect's home to effectuate the arrest absent the suspect's consent or some exigent circumstance. *Griffin v. Wisconsin*, 483 U.S. 868, 883 (1987).

4

In this case, Defendants argue that they are entitled to summary judgment on Plaintiff's unlawful entry claim because (1) Wiek consented to their entry, (2) exigent circumstances justified the entry, and (3) Wiek had no expectation of privacy in his home because there was an unrelated outstanding warrant out for his arrest. The Court addresses each of those arguments in turn.

### i. Consent

Defendants first argue that, by opening his door in response to their knock and by following their commands to get on the ground, Wiek effectively consented to Defendants' entry into his home. The Court firmly rejects that argument.

Answering a knock at the door does not extinguish one's right to privacy and solitude in the home. *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 690 (7th Cir. 2001). Nor does it constitute an invitation to enter the premises to whoever might be standing on the other side. Society recognizes "a person's right to choose to close his door on and exclude people he does not want within his home." *United States v. Berkowitz*, 927 F.2d 1376, 1387 (7th Cir. 1991) ("right to exclude is one of the most—if not the most—important components of a person's privacy expectation in his home"). The undisputed facts show that Wiek did not know who was knocking before he opened the door, and was not given an opportunity to exercise his right to exclude once the door was open. *Id.* Therefore, he cannot be said to have consented to the detective's entry through the simple act of answering his door.

Nor did Wiek consent to the entry by complying with the detectives' command to get on the ground while one of the detectives pointed a gun at him. It seems plain to the Court that even the fiercest protector of privacy rights might respond in the same way.

Wiek's compliance with the detectives' demands merely shows that he valued his life, not that he intended to waive his Fourth Amendment rights.

The Court notes that Defendants seem to misread the Seventh Circuit's opinion in *Berkowitz* on this issue. In *Berkowitz,* the Seventh Circuit held that the District Court erred in denying the defendant's motion to suppress without conducting an evidentiary hearing regarding the constitutionality of his arrest. The Appellate Court found that, contrary to the District Court's determination, there was a material dispute concerning the facts of the arrest: Berkowitz alleged that law enforcement officers entered his home without his consent, while the government alleged that Berkowitz surrendered to the officers at his door, thus consenting to their entry. In applying *Berkowitz*, some courts have held that where a suspect "acquiesces" or "submits" to an officer's authority, he effectively waives his Fourth Amendment right to be free from police entry into the home. *See, e.g., Saffold v. Vill. of Schaumburg,* 2010 WL 1752576, at *4 (N.D. Ill. 2010) (no Fourth Amendment violation where plaintiff "recognizes and submits" to police authority). What Defendants miss, however, is that *Berkowitz* and its progeny have had no affect whatsoever on the separate requirement that waiver of a Fourth Amendment right must be *voluntary. Schneckloth v. Bustamonte,* 412 U.S. 218, 233 (1973). Consent to enter a suspect's home—regardless of how it is expressed—cannot be coerced "by explicit or implicit means, by implied threat or covert force." *Id.* at 228. Where consent to search one's home is given in response to an implied threat, the consent cannot be considered voluntary. *United States v. Bolin,* 514 F.2d 554, 560 (7th Cir. 1975).

Thus, even if Wiek did in fact "submit" or "acquiesce" to police authority by getting on the ground and putting his hands behind his back, those actions cannot constitute voluntary consent because they were responsive to the officer's show of force.

### ii. Exigent Circumstances

Defendants also argue that their entry into Wiek's apartment was warranted under the "exigent circumstances" exception. The Court rejects that argument as well.

Warrantless entry and search of a home is "allowed when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant." *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir.2002). Exigent circumstances are narrowly defined as (1) when officers are in hot pursuit of a fleeing felon, (2) to prevent the imminent destruction of evidence, (3) to prevent a suspect's escape, or (4) to address the risk of danger to the police or to other persons inside or outside the dwelling. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990).

Defendants first argue that their warrantless entry in this case was necessary to prevent Wiek's escape to Poland. The undisputed facts provide no support for that notion and, in fact, demonstrate that Wiek's escape was highly unlikely. The only point of egress from Wiek's apartment was through the unit's front entrance, and two detectives were stationed immediately outside that entrance. There was no need for those detectives to enter Wiek's home to prevent his escape because, if Wiek had tried to escape, he would have walked directly into their custody.

Defendants next argue that the warrantless entry was necessary to address a risk of danger to themselves or third parties. Defendants fail to identify a third party who was at risk, and thus the entry cannot be justified on that basis. As far as the risk to the

7

detectives themselves, the Court finds that the sound of a single yelling voice coming from within the apartment did not present a risk of harm substantial or immediate enough to justify the warrantless entry. In describing the incident, neither detective Keane nor detective Hajdu testified that they perceived any risk of harm before knocking on Wiek's door. (Doc. No. 50-1 at 8-33, 40-74.) There is no reason to believe that a reasonable officer would have perceived the situation differently. *United States v. Richardson*, 208 F.3d 626, (7th Cir. 2000) (government must establish that the circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance).

Defendants also argue that it was reasonable for the detectives to enter the apartment to conduct a protective sweep because "police officers should be able to ensure their safety when they lawfully enter a private dwelling." *Leaf v. Scelnutt*, 400 F.3d 1070, 1087 (7th Cir. 2005). That doctrine is of little use in this case, however, because it *presupposes* a lawful entry. Because there was no warrant, no consent, and no exigent circumstance justifying the officer's initial entry into Wiek's home, the fact that they may have felt compelled to conduct a protective sweep once they were inside is irrelevant.

### iii. Unrelated Outstanding Warrant

Finally, Defendants argue that Wiek had no expectation of privacy in his home because there was an unrelated outstanding warrant for his arrest. Defendants essentially propose that the Court inject a new element into the unlawful entry analysis. Under current law, a warrantless entry into the home is presumed to be unlawful. As discussed above, that presumption can be rebutted in two ways: by showing consent or exigent
8

circumstances. The Court declines to consider whether Wiek had a "reasonable expectation of privacy" in his home because, unlike other searches or seizures, a person's right to be free from unlawful invasions into the cartilage of his home does not depends on his expectation of privacy therein. The Supreme Court has explained the limitations of the "reasonable expectation" inquiry as follows:

> [I]if the Government were suddenly to announce on nationwide television that all homes henceforth would be subject to warrantless entry, individuals thereafter might not in fact entertain any actual expectation or privacy regarding their homes, papers, and effects.... In such circumstances, where an individual's subjective expectations had been "conditioned" by influences alien to well-recognized Fourth Amendment freedoms, those subjective expectations obviously could play no meaningful role in ascertaining what the scope of Fourth Amendment protection was.

Thus, the Court rejects Defendants' "reduced expectation of privacy" argument.

Defendants also argue that, regardless of Wiek's expectation of privacy, because there was an outstanding warrant at the time of the arrest, the officers cannot be said to have made a "warrantless" entry. As the parties point out, whether an officer commits a warrantless entry when he enters a home without knowledge of an existing warrant is a matter of first impression for the Court.

The Court finds that, because Defendants lacked knowledge of the warrant at the time of Wiek's arrest, the arrest is properly considered "warrantless." In analyzing whether a seizure is reasonable, the law generally looks to what the officers reasonably believed to be true at the time. That test often works in law enforcement officers' favor. For example, when an officer receives consent to enter a private premises from a third party whom the officer reasonably believes has common authority over the premises, his entry will be deemed valid, even if it is later revealed that the third party had no authority

over the property. *Illinois v. Rodriguez*, 497 U.S. 177 (1990). The factual determination of reasonableness does not turn on whether the police were correct in their belief, but rather whether a reasonable person in that situation, knowing what the officer then knew, would believe he had authority to enter. *Id.* at 183. Applying that same principle here, the Court looks to what the officers reasonably believed at the time of seizure. Because it is undisputed that Defendants were unaware of the outstanding warrant at the time of the arrest, their entry is properly deemed warrantless.[1]

### iii. Qualified Immunity

Defendant detectives have moved for summary judgment on Wiek's unlawful entry claim on the separate ground that they are entitled to qualified immunity because the bounds of warrantless "doorway arrests" were not well settled or defined in February 2007, when the arrest occurred.

The standard to determine the availability of qualified immunity was established in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). There, the Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[1] The Court also notes that Defendants' proposed rule—that a warrant for one offense can authorize an arrest for an entirely unrelated offense—runs against the purpose of the Fourth Amendment. The Fourth Amendment plainly contemplates that arrest warrants be offense-specific: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." We know also that the framers of the Fourth Amendment were primarily concerned with abolishing the king's "general warrants," which allowed British soldiers to conduct searches and make arrests in any suspected house or premises, day or night, without giving notice or warning. WILLIAM J. CUDDIHY, The Fourth Amendment: Origins and Original Meaning 770 (2009) (referring to general warrants as the "overriding threat to privacy" during the founding era). Allowing Wiek's 2006 warrant for failure to appear in traffic court to justify all subsequent seizures based on suspicion of unrelated offenses would threaten that important function of the Fourth Amendment.

constitutional rights of which a reasonable person would have known." This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Court finds that the bounds of warrantless doorway arrests were sufficiently settled, at the latest, in 2001 when the Seventh Circuit ruled in *Sparing v. Vill. of Olympia Fields,* 266 F.3d 684 (7th Cir. 2001). Thus, the defendant detectives' entry into Wiek's home to effectuate a warrantless arrest, without Wiek's consent or some exigent circumstance, violated Wiek's clearly established Fourth Amendment rights. Detectives Keane and Hajdu are not entitled to qualified immunity.

### B. Unreasonable Detention

Wiek also claims that he was denied a prompt judicial determination of probable cause by a judicial magistrate as guaranteed by the Fourth Amendment and *Gerstein v. Pugh,* 420 U.S. 103 (1975). Specifically, Wiek alleges that the City of Chicago authorizes a widespread practice of "holding" arrestees for the impermissible purpose of continuing investigations and placing them in lineups, thereby depriving numerous individuals of prompt hearings as required by the Fourth Amendment.

"A jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement...." *County of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991). Because Wiek received his probable cause hearing within forty eight hours of arrest, the Court presumes he received a timely hearing. Wiek can refute that presumption by demonstrating that his detention

was prolonged for the purpose of gathering evidence to justify his arrest. *Willis v. City of Chicago,* 999 F.2d 284, 289 (7th Cir. 1993).

Wiek argues that because the police held him overnight so he could be placed in a line-up the following day, they were collecting evidence to justify his arrest and therefore should be held to have unreasonably delayed his *Gerstein* hearing. The Court declines to accept that argument.

The record makes clear that Wiek's arrest was supported by probable cause; Wiek does not contest that fact. Thus, the line-up that took place the next day was not conducted to justify the arrest; it was done to collect more evidence against Wiek, which is plainly allowed. Law enforcement may bolster its case against a defendant while he awaits his *Gerstein* hearing. *U.S. v. Daniels,* 64 F.3d 311 (7th Cir. 1995). The Court therefore rules that Defendants are entitled to summary judgment on Wiek's unlawful detention claim.

## CONCLUSION

For the above reasons, the Court GRANTS Wiek's Motion for Summary Judgment on liability against Defendants Keane and Hajdu on the home entry claim, but DENIES that Motion as to the unreasonable detention claim. As for the Defendants' Motion for Summary Judgment, the Court DENIES the Motion as to the home entry claim but GRANTS the Motion as to the unreasonable detention claim.

IT IS SO ORDERED.

1/30/13
Dated

Hon. William J. Hibbler
United States District Court